(No. 6639.  March 31, 1939.)

IDAHO GOLD DREDGING CORPORATION, a Corporation, Appellant, v. BOISE PAYETTE LUMBER COMPANY, a Corporation, and UNITED PACIFIC INSURANCE COMPANY, a Corporation, Formerly UNITED PACIFIC CASUALTY INSURANCE COMPANY, a Corporation, Respondents.

[90 Pac. (2d) 688.]

W. A. Johnston for Appellant.

Richards & Haga for Respondents.

AILSHIE, C. J.—This action was instituted by appellant Idaho Gold Dredging Corporation (which we will hereinafter refer to as Dredging Co.) against the respondents Boise-Payette Lumber Company (to which we will hereinafter refer as Lumber Co.) and the United Pacific Insurance Company, to recover attorney's fees incurred in procuring the dissolution of an injunction theretofore issued. The material facts are substantially as follows:

The Dredging Co. on October 20, 1930, obtained a judgment against the Lumber Co. which was subsequently affirmed by this court (54 Ida. 765, 37 Pac. (2d) 407). The Lumber Co. on taking its appeal deposited in escrow, with the First National Bank of Idaho, bonds and other securities of a market value of $140,000, which by stipulation was to serve as a *supersedeas* pending the final determination of the appeal by this court. The judgment having been affirmed and the *remittitur* having been filed in the district court, and the Dredging Co. being about to cause execution to issue against the securities held by the bank as *supersedeas*, the Lumber Co. commenced an action in the district court in and for Ada county, praying an injunction against the Dredging Co., its attorneys, agents and officers, from collecting or in any manner proceeding to collect, the judgment. After the commencement of this latter action, the district court issued an injunction *pendente lite* and as a condition precedent thereto required that the Lumber Co. furnish an injunction bond in the sum of $5,000, to cover possible damages, in conformity with the terms and provisions of sec. 6-405, I. C. A. That statute provides as follows:

"On granting an injunction, the court or judge must require, except when the state, a county, or municipal corporation, or a married woman in a suit against her husband,

is a party plaintiff, a written undertaking on the part of the plaintiff, with sufficient sureties to the effect that the plaintiff will pay to the party enjoined such costs, damages, and reasonable counsel fees, not exceeding an amount to be specified, as such party may incur or sustain by reason of the injunction, if the court finally decide that the plaintiff was not entitled thereto.''

The bond was duly executed and approved and on the filing thereof the injunction issued. It is upon that contract that this present action has been prosecuted.

The injunction action was commenced February 15, 1935, (see *Boise Payette Lumber Co. v. Idaho Gold Dredging Corp.*, 56 Ida. 660, 58 Pac. (2d) 786) and a show cause order issued and was served; and on March 11th, the injunction was granted and the bond was thereupon executed and filed. The Dredging Co. demurred to the complaint and the demurrer was heard March 15, 1935, and was sustained by the court; and an order was entered dismissing the action, on the ground that the complaint failed to state a cause of action. At the time the trial judge dismissed the action, he incorporated in the order the following provisions with reference to the temporary injunction and the bond given thereon:

''That the temporary injunction heretofore issued herein be and the same hereby is dissolved, but the order dissolving such temporary injunction shall be suspended to and including the 20th day of March, 1935, and if plaintiff perfects an appeal from the order dismissing its complaint and action on or before said date, including the filing of the necessary transcript in the Supreme Court within said time, the said order dissolving such temporary injunction shall be further suspended during the pendency of the appeal herein, and the bond thereunder given continued in full force and effect until the action be disposed of in the Supreme Court, or until the further order of the Court in the premises.''

The appeal to this court was perfected within the time required by the order of the district judge; and the case was subsequently heard on appeal and the judgment of the district court dismissing the action was affirmed and is reported in 56 Ida. 660, 58 Pac. (2d) 786. Thereupon a writ of *certiorari* to the Supreme Court of the United States was applied for

and was thereafter denied, as appears at 299 U. S. 577, 57 Sup. Ct. 40, 81 L. ed. 425. Upon denial of the application for the writ by the Supreme Court of the United States, the Lumber Co. paid the original judgment.

It will therefore appear that the ultimate facts of the whole proceeding as involved here are:

(a) The Dredging Co. had a judgment against the Lumber Co. for $100,000 which had been affirmed by the Supreme Court of the state;

(b) The Lumber Co. had on deposit with the First National Bank of Idaho bonds and other securities of the market value of $140,000, in lieu of a *supersedeas* bond;

(c) The Dredging Co., being about to proceed with the collection of its judgment, the Lumber Co. instituted its action in the district court to restrain and enjoin the collection of the judgment and procured its injunction *pendente lite* and caused to be executed and filed the injunction bond here in controversy;

(d) The trial court subsequently held that the complaint on which the injunction was issued did not state facts sufficient to constitute a cause of action and dismissed the action. That judgment was subsequently affirmed by this court and writ of *certiorari* to the Supreme Court of the United States was thereafter denied;

(e) The writ of injunction and injunction bond accomplished the purpose sought by the Lumber Co., to the extent that it stayed the collection of the judgment from the time it was executed until after this court affirmed the judgment of the district court.

The appeal by the Lumber Co., from the order dismissing its action in the district court and conditionally dissolving the injunction, rendered it necessary for the Dredging Co's. attorneys to follow the case and defend the action of the trial court on appeal to this court.

It appears from the complaint on the injunction bond now before us that the action against the Dredging Co. was "*primarily* and *principally* to enjoin and restrain the said plaintiff, its officers, agents, attorneys, representatives and assigns from collecting or attempting to collect by execution or otherwise that certain judgment for the sum of One

Hundred Thousand Dollars ($100,000.00), together with costs and interest recovered on October 20th, 1930," etc.

The trial court sustained the demurrer to the complaint herein and judgment of dismissal was therefore entered and the appeal here is from the judgment. It is the contention of the respondents that they are not liable on the bond, for the reason that the services rendered were rendered in defending on the merits of the case in the district and supreme courts and not upon a motion to dissolve the injunction *pendente lite*. The answer to that contention will be conclusive of the issue involved.

It is urged by appellant that the decision of this case is and should be governed by the decision in *Miller v. Donovan*, 13 Ida. 735, 92 Pac. 991, 13 Ann. Cas. 259. That case is an exact parallel with the present case, with this exception: In that case the defendant in the injunction suit filed both a motion to dissolve the injunction *pendente lite* and a demurrer to the complaint. The court heard both the motion and demurrer at the same time and subsequently sustained both of them. The plaintiff appealed from the judgment, as was done here, and the trial court in that case entered an order somewhat similar to the one in this case, suspending the order of dissolution of the injunction pending the appeal. The court stated the facts of that case as follows:

"The injunction was issued in *Donovan et al. v. Miller et al.*, February 17, 1906, and on the 26th defendants filed a demurrer to the complaint on the grounds that it did not state facts sufficient to constitute a cause of action. On March 7th, defendants moved the court for a dissolution of the injunction on the grounds that the plaintiffs had not made a sufficient showing to entitle them to the writ. This motion was made on the files in the case, and its argument must have necessarily been directed to the failure of the complaint to state a cause of action. The court took the motion under advisement until March 20th, at which time he sustained the motion and dissolved the injunction and also sustained the demurrer and dismissed the action. The same argument and showing therefore that secured the dissolution of the injunction resulted in sustaining the demurrer and a dismissal of the action. . . . . On March 30th, the plaintiffs appealed from the judg-

ment of dismissal, and the sufficiency of the complaint was the sole question considered by the court. It therefore clearly appears in this case that the injunction was the primary and principal relief sought in *Donovan et al. v. Miller et al.*, and that the entire legal service in the trial court was rendered in securing a dissolution of the injunction. The service rendered by Miller's attorney on appeal in that case was in an effort to secure an affirmance of the judgment of the trial court holding that the complaint did not state a cause of action and was not sufficient to authorize the issuance of a writ of injunction.''

After reviewing a number of authorities on the subject, the court concluded as follows:

''Applying these principles to the facts and circumstances of the case, we are led to the conclusion that the services rendered by counsel in *Donovan et al. v. Miller et al.* are properly referable to the injunction and grew out of it and were incurred 'by reason of the injunction.' The action was instituted to obtain the injunction and restrain the sale. Had they not obtained the order and writ, the judgment creditor would have collected his judgment, notwithstanding the action, and the judgment debtor would, doubtless, never have commenced the action but for the expectation that he could restrain the sale of the property levied upon and the consequent payment of the judgment. After Donovan et al. appealed from the judgment, it became necessary for Miller to follow the case into the appellate court in order to reap the fruits of his victory in securing the dissolution of the injunction.''

*Miller v. Donovan, supra,* has never been overruled or criticized. On the contrary, it was cited with approval recently in the cases of *Beech v. American Surety Co.,* 56 Ida. 159, 168, 51 Pac. (2d) 213, and *Davidson Grocery Co. v. United States F. & G. Co.,* 52 Ida. 795, 21 Pac. (2d) 75. It was also cited with approval and followed by the Oklahoma court in *Oklahoma Cotton Growers Assn. v. Salyer,* 134 Okl. 55, 272 Pac. 855. The holding in the Miller-Donovan case is in no way inconsistent or out of harmony with the general rule as contended for by respondent's counsel and quoted from 32 C. J. 477 as follows:

"To authorize an allowance of counsel fees for services rendered in procuring the dissolution of an injunction the evidence must discriminate between services rendered in the case generally and services which were strictly necessary to procure a dissolution of the injunction; if this is not done there is no basis for an allowance for such services, although the fact that it is impossible exactly to separate the value of services rendered in securing the dissolution from that of services rendered in examining the case on its merits will not preclude recovery for services in connection with the dissolution, where the best possible estimate is made."

As we will later see, the purpose of the action, in which the bond was given, was to enjoin the collection of the judgment. When that purpose failed, the whole object of the action failed.

The contract (injunction bond) and the statute under which it was given provide that "the plaintiff will pay to the party enjoined such costs, damages, and reasonable counsel fees . . . . as such party may incur or sustain by reason of the injunction, *if the court finally decide that the plaintiff was not entitled thereto.*" Liability on the contract is not dependent on the form of procedure pursued to procure a dissolution of the injunction; the right to the injunction may as well be raised by a demurrer to the complaint on which it was issued as by motion, if in fact the complaint is insufficient to support the injunction.

The trial court held the complaint insufficient and this court affirmed the action of the trial court. (56 Ida. 660, 58 Pac. (2d) 786.) The bond sued upon here was not executed and filed until after the hearing on order to show cause; and it follows that any legal services rendered prior to the execution of the bond would not be chargeable to this contract. (*Ferrell v. Coeur d'Alene & St. Joe Trans. Co.*, 29 Ida. 118, 157 Pac. 946.) On the other hand, any service rendered thereafter, in securing or maintaining the dissolution of the writ, is clearly within the terms of the contract and the statute. (See *Scholtz v. American Surety Co.*, 35 Ida. 207, 206 Pac. 187.)

The order sustaining the demurrer was not appealable; it could only be reviewed on appeal from the judgment which was a dismissal of the action. The Lumber Co. ap-

pealed from the judgment of dismissal and that rendered it necessary for the Dredging Co. to follow the case and defend the judgment on appeal in order to sustain the dissolution effect of the judgment. In the meanwhile the injunction was still in force and the bond was not discharged. The action in which the bond was given was purely a suit in equity to enjoin the collection of a judgment at law previously entered and affirmed by this court. (*Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.*, 54 Ida. 765, 37 Pac. (2d) 407.)

It is thought that *Moseley v. Fidelity etc. Co.*, 33 Ida. 37, 189 Pac. 862, 25 A. L. R. 564, is in line with and sustains the rule we are following in this case. That was a suit on an attachment bond where no motion had been made to dissolve the attachment, and "where a trial of the principal action was necessary to dispose of the attachment." It was held that attorney fees incurred in defeating the attachment suit were recoverable. The holding in the Moseley case was later referred to, approved and distinguished in *Randall v. United States F. & G. Co.*, 53 Ida. 310, 23 Pac. (2d) 319.

The relief sought here was in fact simply to make permanent the *pendente lite* order on which this bond was given. The statute provides the method of procuring a new trial and a court of equity cannot order a court of law to grant a new trial; it may enjoin the collection of a fraudulent judgment but it cannot review the merits of the case and order it retried. (See *Donovan v. Miller*, 12 Ida. 600, 88 Pac. 82, 10 Ann. Cas. 444, 9 L. R. A., N. S., 524; *United States v. Throckmorton*, 98 U. S. 61, 65, 25 L. ed. 93, 96; *Pico v. Cohn*, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 25 Am. St. 159, 13 L. R. A. 336.)

The judgment is reversed and the cause is remanded with directions to overrule the demurrer and to take further appropriate proceedings in conformity herewith. Costs awarded to appellant.

Givens, Morgan and Holden, JJ., concur.

Budge, J., did not sit at the hearing nor participate in the decision.

Petition for rehearing denied.