445 P.2d 720

UNITY LIGHT & POWER CO., a Non-Profit
Cooperative Ass'n, Plaintiff-Respondent,
and Cross-Appellant,

v.

CITY OF BURLEY, a Municipal Corp., & J.
Leonard Salmon, Mayor, Fred R. Williams,
Dredge Roberts, Garis Robertson, Wm. J.
Morgan, Verl Chesley, Lamar Craner, Mem-
bers of the City Council and Charles Davis,
City Electrician thereof, Defendants-Appel-
lants, and Cross-Respondents.

No. 9589.

Supreme Court of Idaho.

Sept. 16, 1968.

Rehearing Denied Oct. 28, 1968.

Peter K. Church, Burley, for appellants.

Parsons & Smith, Burley, William J. Dee, Grangeville, for appellee.

McFADDEN, Justice.

This action was instituted in August, 1961, and is another phase of the litigation involving the City of Burley and the non-profit cooperative associations delivering electrical energy to their members that surround the city. See Unity Light & Power Co. v. City of Burley, 83 Idaho 285, 361 P.2d 788 (1961); Rural Elec. Co. v. City of Burley, 89 Idaho 112, 403 P.2d 580 (1965).

Unity Light & Power Co. (plaintiff-respondent, referred to herein as Unity) is a non-profit cooperative association organized pursuant to the provisions of Title 30, Ch. 10, I.C. It furnishes electrical energy to its members situate within the rural areas generally southerly of the City of Burley. In 1957 Burley Highway District adopted a resolution granting to Unity a franchise over, upon and across certain designated roads and highways within the district authorizing Unity to erect and maintain power lines along the roads within the district. This 1957 resolution also referred to a prior franchise granted by the Highway District to Unity and recognized the validity of that prior franchise.

The City of Burley (defendant-appellant, referred to herein as Burley) has for many years operated a municipal power system furnishing electrical energy to inhabitants of the city. In the late 1950's Burley experienced a rapid growth and expanded (by annexation) its city limits southerly into the area which previously Unity had serviced by delivering electrical energy to its members.

When annexation of territory previously serviced by Unity was completed, Burley commenced to furnish electrical energy to various inhabitants in the newly annexed areas. Unity continued to serve its members in the annexed areas, and continued to maintain its poles and transmission lines therein, although Burley had never granted any franchise to Unity for that purpose.

Unity instituted an action (which was appealed to this court, Unity Light & Power Co. v. City of Burley, 83 Idaho 285, 361 P.2d 788 [1961]) seeking a temporary restraining order to prohibit Burley from interfering with its operation in the

newly annexed area based on the provisions of the so-called "Anti-pirating Law" (I. C. §§ 61–332, 61–333, 61–334). Therein the trial court refused to issue the preliminary restraining order, and this court affirmed, holding that the provisions of I.C. §§ 61–332, 61–333 and 61–334 were not applicable to municipal corporations.

Unity instituted the present action seeking damages from Burley for pirating of customers and also seeking injunctive relief to restrain the city from interfering with Unity's operation as an electric cooperative association within the areas annexed to the city. Burley answered Unity's complaint, denying there was any pirating, and counterclaimed for damages incurred in successfully defending the prior action for a preliminary restraining order. Burley also sought affirmative relief, seeking an order directing Unity to remove all its poles, transmission lines and installations from the newly annexed areas of the city, and additionally, or alternatively that Burley be authorized to maintain eminent domain proceedings against Unity to acquire all the power poles, lines, franchises and easements of Unity in the newly annexed areas.

The trial court entered findings of fact and conclusions of law in the form of an opinion, and in conformity therewith, entered judgment awarding Unity $500 damages for taking by Burley of property rights, including power lines, of Unity and for interference with a contract of Unity. The judgment further denied Burley's claim for damages in defending the prior action; it denied Burley's prayer for condemnation, dismissing that claim, and futher enjoined both Unity and Burley from constructing lines to serve the established customers of the other within the annexed areas. The judgment continued by enjoining Burley from interfering with Unity's existing lines and other facilities, and recognized Unity's right to continue service of its members in the area, placing no obligation on Burley to allow Unity to extend service to any others in the future. The judgment also authorized Burley to prescribe reasonable and nondiscriminatory safety regulations for Unity's facilities within the area. Both parties have appealed from the judgment.

Burley assigns as error the finding and conclusion that Unity is entitled to $500 damages, "and in finding and concluding that the City appropriated a customer of Unity in a manner prohibited by law, interfering with contract and property rights of Unity and 'apparently' taking certain power lines." This assignment of error is not directed to the amount of damages awarded but to a lack of evidence to sustain the finding and conclusion as a whole. It is our opinion that the record sustains the challenged finding of fact and conclusion of law based thereon. The record reflects that a pole of Unity was situated at a place which interfered with a proposed street in the annexed area. Burley convinced the consumer-member of Unity that service should be discontinued, and the pole and lines were removed. The record reflects substantial evidence to sustain this finding, as to appropriation of a customer and interference with property rights. This being true, it will not be disturbed on appeal. Blankenship v. Brookshier, 91 Idaho 317, 420 P. 2d 800 (1966). Value of the continuance of the consumer-member's contract with Unity was sufficiently established to justify the award by the court. 30 Am.Jur. Interference §§ 59–60, p. 94.

Burley assigns as error the failure of the court to find in its favor and to conclude that it was entitled to be awarded $500 as an attorney's fee for costs it incurred in securing dissolution of the temporary restraining order which was the subject of the appeal in Unity Light & Power Co. v. City of Burley, 83 Idaho 285, 361 P. 2d 788 (1961). In order to obtain a temporary restraining order or preliminary injunction, it is generally necessary that security be given "for the payment of such costs and damages including reasonable attorney's fees to be fixed by the court, as may be incurred or suffered by any party who is found to have been wrongfully en-

joined or restrained." I.R.C.P. 65 (c). See Idaho Gold Dredging Corp. v. Boise Payette Lumber Co., 60 Idaho 127, 90 P.2d 688, 164 A.L.R. 1069 (1939); Davidson Grocery Co. v. United States Fid. & Guar. Co., 52 Idaho 795, 21 P.2d 75 (1933). It is essential as a condition for an award of attorney's fees that the attorney's fees be incurred or suffered by the party found to be wrongfully enjoined. Here the trial court found that "No adequate proof of damage was supplied on the city's claim of injury * * *."

■ The city attorney testified that he was on a retainer basis with Burley and that he did not receive any increased fee for the services rendered in the prior action. He stated:

"When I was retained by the City of Burley, I inquired as to my duties, and when I was informed that I was to handle all litigation at no extra fee, do all police court work at no extra fee, attend all council meetings and act as corporate adviser, all on one salary, or one retainer, I took all those into consideration when agreeing to act as City attorney, and had my duties been exclusive of litigation, the fee would have been less than what it is with the duties of handling the litigation.

*     *     *     *     *     *

"Q. But the point is that whether you defended this law suit or not, you would have still received your $250.00 a month, is that correct?

"A. That's correct."

The trial court did not err in refusing to award Burley damages in this regard, for there was no proof that Burley sustained any damages for attorney's fees in securing dissolution of the injunction, as there is insufficient showing of the actual costs to the city for the attorney's services.

The trial court refused to grant Burley's request that Unity be required to remove all its lines and poles from the streets and alleys in the newly annexed and disputed areas of the city of Burley. In this regard the trial court was correct. Unity, a nonprofit cooperative association, incorporated under the provisions of Title 30, Ch. 10, I.C., had been granted a franchise by the Burley Highway District for use of public ways for its lines and poles within the area of the Burley Highway District. (See: Title 40, Ch. 16, I.C., as to authority of such highway districts.) Burley contends in effect that upon annexation of the disputed territory, it obtained exclusive jurisdiction over all the streets and alleys of the newly annexed territory and that it could require Unity to remove all its facilities from the streets and alleys of the city. Unity, on the other hand, takes the position that annexation of the disputed territory does not terminate the right of Unity to continue to serve its members who had been customers prior to the annexation.

■ Numerous cases have been cited by the parties, in support of their respective positions. A sharp conflict exists between the two lines of authority. However, it is our conclusion that once Unity lawfully entered into an area to serve its members, annexation of that area by Burley does not (in the absence of condemnation) authorize an ouster of Unity from that area. City of Mesa v. Salt River Project Agr. Imp. & Power Dist., 92 Ariz. 91, 373 P.2d 722 (1962); Duke Power Co. v. Blue Ridge Elec. Membership Corp., 253 N.C. 596, 117 S.E.2d 812 (1961); Pee Dee Elec. Membership Corp. v. Carolina Power & Light Co., 253 N.C. 610, 117 S.E.2d 764 (1961); State ex rel. Southwestern Gas & Electric Co. v. Upshur Rural Elec. Co-op. Corp., 156 Tex. 633, 298 S.W.2d 805 (1957); Town of Gans v. Cookson Hills Elec. Co-op., 288 P.2d 707 (Okl.1955). Contra, City of Moultrie v. Colquitt County Rural Elec. Co., 211 Ga. 842, 89 S.E.2d 657 (1955); Farmers Elec. Co-op. Corp. v. Arkansas Power & Light Co., 220 Ark. 652, 249 S.W. 2d 837 (1952).

Among other considerations which lead to the conclusion that Unity could not be ousted from the territory annexed by Burley insofar as service to its members at the time of annexation is concerned, is that the legislature as early as 1903 recognized that

delivery of electricity throughout the state was essential. In that year it enacted what is now I.C. § 62–705 (as amended in 1945, S.L. 45, Ch. 37), granting rights of way along all public roads, streets and highways for delivery of electrical energy, except within limits of incorporated cities. It would be contrary to declared legislative policy to deny validity of the franchised right granted by Burley Highway District. That the legislature has reaffirmed this policy is to be found in the provisions of I.C. §§ 61–333A, 61–333B, and 61–333C, enacted as S.L. 1963, Ch. 269 subsequent to institution of the instant action.

Our holding here is not to be considered as being in any way contrary to the decision in Village of Lapwai v. Alligier, 78 Idaho 124, 299 P.2d 475 (1956), wherein it was held that a village which granted a franchise to a water company could require removal of the water company's lines from the streets after expiration of the franchise. However, that is not the factual situation in this case. Here an area was annexed wherein the cooperative association was lawfully operating at the time.

Burley in this action also sought to exercise the right of eminent domain, by a condemnation of Unity's property within the annexed territory. The trial court in its opinion quoted the following statutory provisions:

I.C. § 7–701. "Subject to the provisions of this Chapter, the right of eminent domain may be exercised in behalf of the following public uses:

\*   \*   \*   \*   \*   \*

"6. Telephones, telegraph and telephone lines, and lines used in transmitting electric current for power, lighting, heating or other purposes."

I.C. § 50–1125, which gives the municipality the right " \* \* \* to take private property \* \* \* for any necessary public purpose \* \* \*."

I.C. § 50–2805 grants to cities the right to issue bonds " \* \* \* to acquire, by purchase or otherwise, a light and power plant for such municipal corporation, and to construct, enlarge, extend, repair, alter and improve such plant."

I.C. § 50–2815 which includes as a power of a municipality the right " \* \* \* to acquire by \* \* \* [the exercise of eminent domain] \* \* \* lands or rights in lands \* \* \* and \* \* \* to exercise the right of eminent domain for any of the works, purposes or uses provided by this act, in like manner and to the same extent as provided by section 7–720."

The trial court then stated that under the foregoing statutory provisions Burley would have had the right to proceed with condemnation proceedings, except for the fact that in 1963 the legislature enacted what is now I.C. § 61–333B. The statute is a special one designed to permit annexing cities to acquire the facilities of a utility that served the area prior to the annexation. The trial court held that there was neither pleadings nor proof showing compliance with this newly enacted statute and then stated: "Where there is a general statute, and a special or specific statute, dealing with the same subject, the provisions of the special or specific statute will control those of the general statute." The trial court held that condemnation could not be allowed, holding that I.C. § 61–333B afforded the applicable remedy. We do not agree with this conclusion.

This action was instituted on August 28, 1961, when Unity filed its complaint; Burley filed its answer and counterclaim on February 16, 1962, and therein it sought by its third cause of action to exercise the right of eminent domain by condemnation of Unity's property. Even though this case came on for trial in December 1963, subsequent to the declared effective date of S.L. 1963, Ch. 269 (June 1, 1963), Burley's right to exercise the power of eminent domain properly should have been adjudicated in accordance with the law in effect at the time of the filing of its answer and cross-claim. The reason for this conclusion is

that unless a contrary intention clearly appears therein, a statute will not be given retrospective effect. Cook v. Massey, 38 Idaho 264, 265, 200 P. 1088, 35 A.L.R. 200 (1923). I.C. § 73–101. The legislature, in setting the effective date of the new statute, demonstrated an intent that it not be given a retrospective intent. 50 Am.Jur. Statutes § 478, p. 494. I.C. § 61–333B is more than a mere remedial or procedural statute; it purportedly involves a change of substantive rights in the exercise of the right of eminent domain.

■ It is thus our conclusion that the trial court was in error in dismissing Burley's claim for condemnation. City of Mesa v. Salt River Project Agriculture Improvement & Power Dist., 92 Ariz. 91, 373 P.2d 722 (1962); McQuillan, Municipal Corporations, § 32–69 (1964). See also Long Island Water-Supply Co. v. City of Brooklyn, 166 U.S. 685, 17 S.Ct. 718, 41 L.Ed. 1165 (1897); Southern Indiana Gas & Elec. Co. v. City of Boonville, 215 Ind. 552, 20 N.E.2d 648 (1939); City of Thibodaux v. Louisiana Power & Light Co., 126 So.2d 24 (La.App.1960).

■ Unity contends that condemnation should not be authorized because the use to which they put the property is a public use and on an equal basis of that of the municipality. However, I.C. § 7–703(3), which states:

"The private property which may be taken under this chapter includes:

\* \* \* \* \* \*

(3) Property appropriated to public use; but such property shall not be taken unless for a more necessary public use than that to which it has already been appropriated."

and I.C. § 6–704(3), which states:

"Before property can be taken it must appear:

\* \* \* \* \* \*

(3) If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."

are inapplicable to this situation, because the use by the municipal corporation is a more necessary one than is the use by a private organization. City of Mesa v. Salt River Project Agr. Imp. & Power Dist., supra. McQuillan, Municipal Corporations, § 32–69 (1964).

■ The trial court enjoined Burley from interfering with Unity's present customers, and also enjoined Unity from serving any new customers in the area. Unity complains that the trial court erred in restricting it to service of its existing members. The trial court did not err in this regard. Until such time as Unity has secured a franchise from Burley, it is not entitled to extend its service to other than those members served at the time of annexation. Pee Dee Elec. Membership Corp. v. Carolina Power & Light Co., 253 N.C. 610, 117 S.E.2d 764 (1961); Town of Gans v. Cookson Hills Elec. Co-op., 288 P.2d 707 (Okl.1955); City of Tucson v. Polar Water Co., 76 Ariz. 404, 265 P.2d 773 (1954); Western Gas Co. of Washington v. City of Bremerton, 21 Wash.2d 907, 153 P.2d 846 (1944). Rhyne, Municipal Law § 23–4 at 497–498 (1957).

It is pointed out that this case arose at a time prior to enactment of rather substantial legislative changes dealing with problems created by annexation to cities of areas served by cooperative electrical associations. See S.L.1963, Ch. 269. Neither party to this litigation, nor the trial court considered the provisions of that law applicable to the case, and in this viewpoint we have concurred insofar as this opinion is concerned.

The judgment of the trial court is affirmed except as to that portion thereof which dismissed appellant City of Burley's claim to exercise its right of eminent domain, and that portion of the judgment is reversed and that claim is ordered reinstated. The cause is remanded for further proceedings concurrent herewith. No costs allowed.

SMITH, C. J., and TAYLOR, McQUADE and SPEAR, JJ., concur.